UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEBRA FAHMIE,
        Plaintiff,

vs.                                           Case No.: 4:19cv240/RH/EMT

ANDREW SAUL,
Commissioner of Social Security,
        Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*.   The case is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34, and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.   Upon review of the record before the court, the undersigned finds that certain findings of fact and determinations of the Commissioner are not supported by substantial evidence and application of proper legal standards and, therefore, that

the Commissioner's decision should be reversed and the matter remanded for the narrow purpose set forth below.

## ISSUES ON REVIEW

Plaintiff raises three issues on appeal, arguing the ALJ erred in (1) giving insufficient weight to the opinions of three state agency consultants who found she had severe mental impairments; (2) failing to state with particularity the reasons for discounting the consultants' opinions; and (3) failing to consider the combination of her impairments when determining residual functional capacity (ECF No. 18 at 1).

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI in December 2015, alleging disability beginning October 15, 2015 (tr. 165–66, 289).[1]  The applications were denied initially and on reconsideration (tr. 213–20, 224–28, 230–34).  Plaintiff requested a hearing before an administrative law judge (ALJ) (tr. 235–42).  The request was granted, and an ALJ conducted a hearing on March 12, 2018 (tr. 1128–68).  By decision dated July 17, 2018, the ALJ found Plaintiff not disabled under the Act (tr. 58–81).  Plaintiff petitioned the Appeals Council for review of the ALJ's

---

[1] All references to "tr." refer to the transcript of the Social Security Administration record filed (*in separate filings*) on October 1 and December 13, 2019 (ECF Nos. 16, 20, 21).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

decision; the Appeals Council denied the request (tr. 1–6).   The ALJ's decision thus became the final determination of the Commissioner; that determination is now ripe for review.

FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issues raised in this appeal, including the following:

- Claimant meets the insured status requirements of the Act through June 30, 2018 (tr. 63).

- Claimant has not engaged in substantial gainful activity since October 15, 2015, the date of alleged onset (*id.*).

- Claimant has the following severe impairments: obesity, degenerative disc disease, and post status right eye surgery (tr. 64).

- Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (tr. 65).

- Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.167(b) and 416.967(b).   Claimant can frequently climb ramps and stairs but never climb ladders, ropes, or

scaffolds.    She can frequently stoop and kneel and occasionally crawl. She is limited in near acuity and far acuity in the right eye, which limits her vision to occasional in regard to tasks requiring full binocular vision in the right eye.    Claimant is "able to avoid most workplace hazards," but she cannot work at unprotected heights or with moving mechanical parts.    Claimant cannot drive at night or handle small objects, and she should avoid concentrated exposure to hazards (tr. 65–66).

- Claimant is capable of performing past relevant work as a musician, singer, and salesclerk, none of which require the performance of work-related activities precluded by her residual functional capacity (tr. 71).

- Claimant has not been disabled, as defined by the Act, from October 15, 2015, through July 17, 2018, the date of the decision (tr. 73).

STANDARD OF REVIEW

A federal court reviews the Commissioner's decision to determine whether the decision is supported by substantial evidence in the record and application of proper legal standards.    *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were

not applied.'"); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997);

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).    "A determination that is

supported by substantial evidence may be meaningless . . . if it is coupled with or

derived from faulty legal principles."   *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th

Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret.

Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).   As long as proper legal standards were

applied, therefore, the Commissioner's decision will not be disturbed if, in light of

the record as a whole, the decision appears to be supported by substantial evidence.

42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Lewis*,

125 F.3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Substantial evidence is more than a scintilla, but less than a preponderance; it

is "such relevant evidence as a reasonable person would accept as adequate to

support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)); *Lewis*, 125 F.3d at 1439.

When reviewing the Commissioner's decision, the court may not decide the facts

anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).   And

the court may not look "only to those parts of the record which support the ALJ" but

instead "must view the entire record and take account of evidence in the record

which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence in the record. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Disability is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the claimant not only is unable to do her previous work "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. at § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

---

[2] **Error! Main Document Only.**In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from performing past relevant work, she is not disabled.

5.     Even if the claimant's impairments prevent her from performing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity (RFC) and vocational factors, the claimant is not disabled.

The claimant bears the burden of establishing a severe impairment that prevents her from performing past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the

claimant's impairments, the claimant can perform. *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work identified by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

FACT BACKGROUND[6]

Plaintiff was fifty-four years old at the time of the ALJ's decision (tr. 58, 165). She never completed high school but attended two years of college (tr. 1135). Plaintiff testified at the hearing that she was self-employed as a musician and singer (tr. 1132, 1135). She said she played the guitar and had performed "[o]n and off for all [her] life" (tr. 1133). She typically worked enough to pay her rent, but when she was unable to make ends meet, she would "try to get friends to help . . . do work around the property so [she could] stay, because it's cheap" (*id.*). Plaintiff testified she previously was employed in the sales and hospitality industries and as a travel agent and real estate agent (tr. 1135, 1152). She also did volunteer work "[o]n and off for a long time" for the Franklin County Humane Society, Big Bend Hospice, Tonya's Hope Cancer Foundation, and the St. George Island Cat Alliance, including performing free concerts for fundraisers and promoting awareness of lost pets and helping reunite them with their owners (tr. 1134–35).

---

[6] The recitation of facts set forth below is derived from Plaintiff's testimony at the hearing before the ALJ and the administrative record and is limited to facts bearing on the issues Plaintiff raised on appeal.

Plaintiff said she previously received disability benefits and was receiving food stamps until shortly before the hearing but had failed to complete the renewal paperwork (tr. 1133–34). When asked the reason she believes she can no longer work, Plaintiff said her "body hurts a lot"; she also mentioned anxiety, which she said caused her to be late for work (tr. 1138–39). She took Vistaril, which helped with the anxiety, and said she had been taking psychotropic medication "[o]n and off for decades," some of which helped and some of which did not (tr. 1139). When asked about psychotherapy, Plaintiff said she admitted herself to a "day hospital" in 2002 or 2003 and received counseling for domestic violence at some other point in time, but she was not receiving psychotherapy at the time of the hearing— purportedly because she did not have access to adequate treatment in the rural area in which she lived (tr. 1139–40).

Plaintiff testified she lived alone but maintained contact with family and friends, which provided a "pretty decent" support system (tr. 1141). When asked if medication, anxiety, or depression affected her memory or concentration, Plaintiff responded in the affirmative and said she had problems when talking to people and "tried to focus on them" but would "space out really bad" and have to "reel [her]self back" (tr. 1143). She said she was unable to concentrate on what was "going on" and got "distracted by other things" (tr. 1143–44). When asked how she coped with

the problem while performing, Plaintiff said she would "fake it" and "try to just sing whatever [she could] make up to get through it" (tr. 1144).   Plaintiff testified she worked hard to promote her music through social media and "to try to get work" and that the poorest paying gigs brought approximately $50.00 to $60.00 and the best paying gig brought $200.00 (tr. 1146–47).   When asked about her weekly income, Plaintiff said it varied greatly but that "four gigs a week [was] amazing," although she could no longer perform at that pace (tr. 1146).

Plaintiff confirmed she was able to make simple decisions (tr. 1144).   Due to lack of motivation and depression, however, as well as poor vision, she did not tend to hygiene as well as she should (tr. 1150–51).   Her friends tried to help in that regard (*id.*).   When asked how anxiety and depression impacted her work as a musician, Plaintiff stated she sometimes had to cancel engagements but also that performing helped "release" anxiety (tr. 1156).   When asked to describe the depression, Plaintiff confirmed, upon provocation by her representative, that the record shows she reported a depressed mood, sleep and appetite disturbances, loss of interest, isolation, moodiness, irritability, frustration, hopelessness, uselessness, unworthiness, and suicidal ideation (tr. 1156–57).   Plaintiff indicated she had such feelings daily (tr. 1157).

On November 10, 2015, Plaintiff saw ARNP Dana Whaley, her primary care provider, for medication refills and depression (tr. 826).  She had recently had a cornea transplant and was unable to work at the time (*id.*).  She exhibited appropriate judgment and good insight (tr. 827).  Her mood was depressed, and her affect was flat, but she was fully oriented with an intact memory (*id.*).  She reported the depression was worse because of having to rest as a result of the surgery and indicated she had taken Prozac in the past and it had worked well (*id.*).

Plaintiff saw ARNP Whaley again for medication refills on February 16, 2016 (tr. 819–23).  She was cooperative and exhibited appropriate judgment and good insight (tr. 819–20).  ARNP Whaley diagnosed "anxiety/depression" and indicated Plaintiff had a chronic "[m]ood disorder due to known physiological condition with depressive features" (tr. 819).

Plaintiff was evaluated a number of times in connection with her claims for DIB and SSI.  Dr. Vincent Ivers, a consultative examiner, evaluated her on June 28, 2016 (tr. 1009).  Dr. Ivers noted Plaintiff's "main issue" was "ongoing low back pain and discomfort" and that Plaintiff "also ha[d] ongoing clinical depression" (*id.*).  According to Dr. Ivers, Plaintiff stated she had had "significant psychiatric issues including bipolar disorder, depression and questionable history of schizophrenia, which she has not been fully diagnosed with" (*id.*).  Plaintiff informed Dr. Ivers she

had an appointment with a psychologist for further evaluation (*id.*). She indicated she previously received disability benefits but tried to return to work only to determine she was unable to do so (*id.*). She was taking Prozac at the time (*id.*). Dr. Ivers diagnosed "[o]ngoing significant depression, possible bipolar disorder" (tr. 1012). As an "additional diagnosis," Dr. Ivers indicated "[p]ossible bipolar disorder, according to the patient, schizophrenia" (*id.*). He concluded Plaintiff "probably will have significant difficulty with most type [sic] of employment, not only with her vision but [also due to] her inability to maintain full activity with her neck and lower back, along with her decreased vision" (tr. 1012).

Robert Kline, III, Psy.D., conducted a consultative psychological examination of Plaintiff on June 27, 2016 (tr. 1015). Plaintiff informed Dr. Kline that she was not currently receiving disability benefits but had received such benefits in the past, from 2002 to January of 2014 (*id.*). She advised Dr. Kline she had worked in the music and sales industries but had not been gainfully employed since 2007 (tr. 1017). Dr. Kline noted Plaintiff "alleged disability due to multiple medical problems including corneal transplant in the right eye, bilateral cataracts, cervical degenerative disc disease, lumbar degenerative disc disease, [] hypertension, [and] nerve damage

in disc herniations" and also commented that she had "alleged clinical depression and anxiety" (tr. 1015).[3]

Plaintiff told Dr. Kline "her depression and anxiety ha[d] been life long but h[ad] grown progressively worse with the progression of her medical issues" (*id.*). She indicated she "experience[d] significant insomnia and [would] occasionally hear voices during times when her mood disturbance [was] most severe" (*id.*).   She said she was prescribed Prozac for "mood issues" but could not afford the prescription at the time; she acknowledged, however, that the medication "was helpful in modulating her symptoms" (tr. 1015, 1017).   In addition to Prozac, Plaintiff had taken Seroquel, Risperdal, Lexapro, Klonopin, and Ambien; she said Lexapro was "particularly problematic for her" and the other medications were not "fully effective in completely controlling her symptoms" (tr. 1015–16).   Plaintiff advised Dr. Kline she received inpatient psychiatric treatment in 2008 after attempting suicide and had previously "admitted herself to a day treatment program" (tr. 1016).

At the time of the evaluation, Plaintiff was living alone in a motorhome (*id.*). She indicated she had "significant difficulty maintaining the home appropriately"

---

[3] Later in the report, Dr. Kline states Plaintiff "alleged disability due to hypertension, chronic pain from degenerative disc disease, and she reported significant dental issues" (tr. 1017).

because of physical and mental health issues (*id.*).   According to Dr. Kline, Plaintiff "often reported, 'I have people come in and help me whenever I can afford it' adding because of her physical and mental health issues, lowered motivation and fatigue associated with depression, and poor eye sight she often neglects her home and personal hygiene" (*id.*).   Dr. Kline observed, however, that Plaintiff appeared for the evaluation with "appropriate personal hygiene" despite having indicated she had "slacked off'" on hygiene and showered only a few times a week (*id.*).   In addition to being unable to maintain her home and personal hygiene, Plaintiff reported difficulty with sleep and "appetite disturbance" (*id.*).   She also said she had very few friends but had "some family relations back in Michigan" (*id.*).   She enjoyed music and walking on the beach" (*id.*).

Dr. Kline observed no unusual mannerisms or repetitive gestures during the evaluation and stated Plaintiff's motor activity was normal (*id.*).   Plaintiff was "consistently polite and cooperative," and her speech was spontaneous, normal in rate and tone, well-articulated, and easily understood (*id.*).   Her thought process was "generally rational and logical" with no loosening of associations, rambling speech, or delusional thinking, and her verbal structure was logical and relevant (*id.* at 1018).

Plaintiff described her mood as agitated and frustrated (*id.*).   Dr. Kline noted "serious depression" throughout the interview and that Plaintiff presented as "flat

and dysthymic" but "motivated for the immediate evaluation" (*id.*).   Plaintiff was "able to attend to the interview without distraction and no significant decline in attention was noted as the interview progressed" (*id.*).   Plaintiff had little difficulty with basic concentration tasks and quickly and easily spelled "WORLD" forward and backward without hesitation or error (*id.*).   Plaintiff was fully oriented and denied "significant or bothersome memory problems" (*id.*).   Dr. Kline diagnosed "major depressive disorder, recurrent, severe, with possible psychosis"; generalized anxiety disorder; and panic disorder (*id.*).

Dr. Kline noted Plaintiff "reported many symptoms consistent with a depressive spectrum disorder including recurrent depressed mood, sleep and appetite disturbance, lethargy and anhedonia, and social isolation that is accompanied by moodiness, increased irritability, and lowered frustration tolerance" (*id.*).   She also reported chronic feelings of hopelessness, uselessness, and worthlessness, as well as periodic suicidal ideation (*id.*).   Plaintiff additionally reported symptoms of an anxiety disorder (*id.*).   Specifically, according to Dr. Kline, Plaintiff reported "intrusive thinking, rumination, and excess worry, sleep problems, psychomotor agitation and restlessness, and focus and concentration issues" (*id.*).   She also "reported symptoms consistent with a finding of a panic disorder including overwhelming feelings of fear and panic that 'feel like the world is about to end,'

symptoms of chest pain and tightness that mimic a heart attack, difficulty breathing, and problems with nausea and lightheadedness" (*id.*).   Based on the evaluation, Dr. Kline opined Plaintiff had a "psychiatric issue of such severity that it would interfere with her ability to perform simple, repetitive tasks, remember and follow directions, or interact appropriately with coworkers, supervisors, and the public" (*id.*).

On July 12, 2016, non-examining state agency psychological consultant Trina Christner-Renfroe, Psy.D., reviewed the record and determined Plaintiff had an affective disorder and generalized anxiety disorder but was showing less severe symptoms than previously shown (tr. 156).   Dr. Christner-Renfroe noted the record showed "normal psychiatric/neurological status in 2012 for physical"; "average IQ and capability to work as a bartender if transportation issues were resolved" in December 2015; normal mood and affect in May 2016; and, as of June 2016, Plaintiff's "predominant limitation to work-like activity [was] physical," and the most recent functional report suggested Plaintiff's main limitation was "vision problems/physical" (*id.*).   Dr. Christner-Renfroe concluded Plaintiff had moderate limitations in activities of daily living and concentration, persistence, and pace and mild limitation in socialization (tr. 156).

Dr. Christner-Renfroe completed a mental residual functional capacity assessment in which she found Plaintiff not significantly limited in the ability to

remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others (tr. 160–62).   Dr. Christner-Renfroe found Plaintiff moderately limited in the ability to understand, remember, and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to charges in the work setting (*id.*).   Notably, Dr. Christner-Renfroe found Plaintiff's allegations

regarding the severity of her symptoms only "partially consistent with the longitudinal objective [medical evidence of record] for mental" (tr. 156).

A second state agency psychological consultant, Heather J. Hernandez, Ph.D., reviewed the record approximately four months after Dr. Christner-Renfroe and completed a mental residual functional capacity assessment identical to that completed by Dr. Christner-Renfroe except Dr. Hernandez found Plaintiff moderately, rather than not significantly, limited in the ability to maintain attention and concentration for extended periods (tr. 183–85). Dr. Hernandez concluded Plaintiff was "capable of sustaining goal-directed activity in [a] routine setting" and could perform simple repetitive tasks (tr. 185).

<u>DISCUSSION</u>

I.    Opinions of State Agency Consultants

As her first assignment of error, Plaintiff argues the ALJ erred in failing to give sufficient weight to the opinions of Dr. Kline, Dr. Christner-Renfroe, and Dr. Hernandez in finding she did not suffer from a severe mental impairment.

In evaluating medical opinions, an ALJ considers numerous factors, including whether the doctor examined or treated the claimant, the evidence the doctor presents to support his or her opinion, and whether the opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he ALJ must

state with particularity the weight given to different medical opinions and the reasons therefor." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x. 875, 877 (11th Cir. 2013). An ALJ may choose to accept some conclusions—or restrictions— within an opinion while rejecting others. If such a choice is made, in addition to explaining the overall weight given a particular medical opinion, the ALJ must explain "'with at least some measure of clarity the grounds for [a] decision'" to adopt particular aspects of a medical opinion. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Failure to explain the rationale for crediting only certain aspects of an opinion will result in a reviewing court "declin[ing] to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id.*

A treating source's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting such an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *Winschel*, 631 F.3d at 1179. The opinion of a non-treating physician, however, is not entitled to any deference or special consideration. *See* 20 C.F.R. §§ 404.1502; 404.1527(c)(1), (c)(2); 416.902,416.927(c)(1), (c)(2); *Denomme*, 518 F. App'x at 877–78; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Moreover, opinions on certain issues, such as a claimant's RFC and whether a claimant is disabled, "are

not medical opinions, . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive of a case;

*i.e.*, that would direct the determination or decision of disability."   20 C.F.R. §§

404.1527(d), 416.927(d); *see* SSR 96-5p.   Opinions reserved to the Commissioner,

even when offered by a treating physician, are not entitled to controlling weight or

special significance.   *See* SSR 96-5p.   Indeed, "[g]iving controlling weight to such

opinions . . . would be an abdication of the Commissioner's statutory responsibility

to determine whether an individual is disabled."   *Id.*   Although a physician's

opinions about what a claimant can still do or the claimant's restrictions may be

relevant, therefore, such opinions are not determinative because the ALJ is

responsible for assessing the claimant's RFC.   *See* 20 C.F.R. §§ 416.927(d),

416.945(a)(3), 416.946(c); SSR 96-5p.

Here, the ALJ gave "some weight" to Dr. Kline's opinion that Plaintiff had a

"psychiatric issue of such severity that it would interfere with her ability to perform

simple, repetitive tasks, remember and follow directions, and interact appropriately

with coworkers, supervisors, and the public" because the ALJ found Plaintiff, in fact,

experienced depression and anxiety (tr. 70).   The ALJ gave "little weight" to Dr.

Kline's finding that Plaintiff was limited to simple, routine tasks (*id.*).   But the ALJ

wholly failed to explain the basis of her decision in that regard (*see id.*); as a result,

the undersigned cannot find such decision supported by substantial evidence or application of proper legal standards. The ALJ's decision, therefore, must be reversed and the matter remanded so the ALJ can set forth the basis for her decision to assign "some weight" to certain aspects of Dr. Kline's opinion and "little weight" to others. *Winschel*, 631 F.3d at 1179 (failure to explain the rationale for crediting only certain aspects of an opinion will result in a reviewing court "declin[ing] to affirm 'simply because some rationale might have supported the ALJ's conclusion.'").

Continuing, the ALJ gave "partial weight" to the opinions of non-examining state agency consultants Dr. Christner-Renfroe and Dr. Hernandez, finding that because Plaintiff continued to work as a musician, she was able to return to her past work (tr. 71). The ALJ also noted Plaintiff lived alone, had not sought psychotherapy, and was able to control her mental health symptoms with medication, as a result of which the ALJ found Plaintiff's mental impairments not severe (*id.*). The undersigned finds the ALJ's decision to give only partial weight to the opinions of Drs. Christner-Renfroe and Hernandez supported by substantial evidence in the record.

Not only did Plaintiff continue to work as a musician/singer up to the time of the hearing, but she also actively tried to expand her business in that regard. And

she volunteered with a number of organizations.   She also testified she worked on

the property at which she lived when unable to pay rent and fostered animals.

Despite complaining of disabling anxiety and depression, Plaintiff did not seek

mental health counseling.   Medication helped control the symptoms, but Plaintiff

testified she could not afford it and thus did not take it.   Yet, Plaintiff was able to

afford other medications and sustain a smoking habit, purchase alcohol, and

presumably provide food for the animals she fostered (*see* tr. 97–98, 1017).   She

also hired people to help maintain her house and assist with her personal hygiene.

Moreover, when meeting with Dr. Kline, Plaintiff maintained appropriate eye

contact, was polite and cooperative, appeared motivated throughout the examination,

expressed her thoughts rationally and logically, and was able to participate in the

interview without distraction.   Put simply, there is no objective medical evidence in

the record to substantiate Plaintiff's claim of disabling mental impairments and

substantial evidence in the record to undermine such claim.

## II.   Explanation for the Weight Given the Medical Opinions Cited Above

As her second assignment of error, Plaintiff argues the ALJ erred in failing to

adequately explain the weight assigned to the opinions of Drs. Kline, Christner-

Renfroe, and Hernandez.   As set forth above, the undersigned finds the ALJ erred

in failing to explain the weight afforded to the different aspects of Dr. Kline's

opinion, as the ALJ explained neither the reasons for the weight assigned nor the reasons for assigning different weight to different aspects of Dr. Kline's opinion. With regard to the opinions of Dr. Christner-Renfroe and Dr. Hernandez, however, the undersigned finds the ALJ adequately explained the weight afforded those opinions.

### III.    Combined Effect of Impairments

Finally, Plaintiff contends the ALJ erred in failing to consider the combined effect of her impairments when determining RFC.   "Where a disability claimant has alleged several severe impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled."   *Jones v. Dep't of Health and Human Servs.*, 941 F. 2d 1529, 1533 (11th Cir. 1991); *see also Jones v. Bowen* 810 F. 2d 1001, 1006 (11th Cir. 1986) ("It is now well settled that the ALJ must consider the combined effects of a claimant's impairments in determining whether he is disabled.").   As applied by the Eleventh Circuit, this rule requires the ALJ to "consider every impairment alleged."   *Gibson v. Heckler*, 779 F. 2d. 619, 623 (11th Cir. 1986).   A statement by the ALJ that "'based upon a thorough consideration of all evidence, the ALJ concludes that [claimant] is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial

gainful activity for a period of at least twelve continuous months[,]" will suffice to demonstrate the ALJ "has considered the combination issue." *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986).   The ALJ, however, maintains the duty to make "findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F. 2d 629, 635 (11th Cir. 1984); *see also Walker v. Bowen*, 826 F. 2d 996 (11th Cir. 1987).

Here, the ALJ found Plaintiff did not have "an impairment or *combination of impairments* that me[t] or medically equal[ed] equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (tr. 65) (emphasis added).   Hence, the ALJ plainly considered the combination of Plaintiff's impairments and made sufficient findings regarding the effects thereof.   *See Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002).

<u>CONCLUSION</u>

For the foregoing reasons, the undersigned finds the Commissioner erred in failing to explain the basis of her decision to assign "some weight" to certain aspects of Dr. Kline's opinion and "little weight" to others.   Based on the error, the undersigned further finds the Commissioner's decision is not supported by substantial evidence in the record or application of proper legal standards and, thus,

that the decision should be reversed and the matter remanded for the narrow purpose of having the ALJ address the reasons for the weight assigned to the different aspects of Dr. Kline's opinion.   42 U.S.C. § 405(g); *Lewis*, 125 F.3d at 1439; *Foote*, 67 F.3d at 1560.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REVERSED** and the Commissioner ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this Report and Recommendation.

2.    That **JUDGMENT** be entered, pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's decision and **REMANDING** the case for further administrative proceedings.

3.    That the Clerk be directed to close the file.

At Pensacola, Florida this 27th day of August 2020.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**